Plaintiff, an emancipated minor, over the age of eighteen years, sustained serious physical injuries from a collision of the motorcycle he was riding and a truck owned by Interstate Natural Gas Company, Inc., in charge of and then being driven by its agent and employee, T. H. Freeman. The collision occurred at or about the hour of four o'clock P. M., May 29, 1947, on the eighteen foot concrete highway that runs easterly from the Town of Sterlington, in Ouachita Parish, in front (north) of the filling station and grocery store of O. G. Crosby. The truck was moving easterly when the collision occurred. The motorcycle, after having made at least two circular trips on the gravelled parkway, some sixty feet wide, between the highway and said filling station and grocery store, turned northward and attempted to cross to the north side of the highway in front of the oncoming truck. The collision then happened. The exact position of the vehicles on the highway at the time of the impact is a bitterly contested question of fact. The position of each side on this question will be fully developed and discussed hereinafter.
Plaintiff alleged that after he had passed over the south one-half of the highway and had turned the motorcycle westerly on the north one-half thereof, he saw the approaching truck with its left wheels several feet over (north) the center black line, or on his side of the road, and:
"Immediately after he noticed the truck in this position and discovered the imminence of the danger which threatened him, and before petitioner could do anything to avoid the collision, the truck crashed head-on into the motorcycle, said collision occurring altogether north of the black center line of said highway and to the westward of O. G. Crosby's Grocery store."
Plaintiff sued to recover a large amount of damages from the truck's owner and its insurer, The American Automobile Insurance Company. As a basis for the action the driver of the truck is charged with negligence in the following respects, to-wit:
Failing to keep a proper lookout for traffic on the highway and failing to see plaintiff and the motorcycle in plain view, whose movements should have been and could have been observed by him when several hundred yards from the point of collision; leaving his traffic lane and crossing over and upon that of plaintiff and not returning thereto in time to prevent the collision; in not driving carefully and prudently under prevailing circumstances; driving at an excessive rate of speed and not having his vehicle under control. Each of the said acts of negligence is alleged to be a proximate cause of the collision.
Defendants admit the happening of the accident at the time alleged and that Freeman, the driver of the truck, was then an employee of the gas company and was on a mission for his employer, but liability in damages to plaintiff to any extent on account of his injuries is denied, as well as all allegations charging Freeman with negligence in connection with the collision.
Further answering, defendants aver that Freeman, as he proceeded along the concrete highway easterly at a lawful and prudent rate of speed, on his proper side thereof, west of Crosby's grocery store, observed a person on a motorcycle riding it in circles upon the gravelled parkway between the store and the highway; that the rider while executing said circular movements did not go upon or very close to the highway, and, therefore, his movements did not portend the perilous situation that soon thereafter suddenly arose; that as plaintiff terminated the last circular trip on said parkway he suddenly turned the motorcycle toward the north and without, at least for his own safety, taking time to observe traffic conditions upon the highway, drove thereupon at right angles to and in front of the truck; that because of this precipitous action and the short distance intervening between the motorcycle and the truck, the collision was inevitable, although Freeman endeavored to avert it by quickly veering the truck's course northeasterly; that after this effort was made, *Page 554 
in fact, almost simultaneously therewith, the collision occurred; that plaintiff was catapulted from the motorcycle in a northeasterly direction and actual contact between the vehicles was made by the right fender of the truck striking the other vehicle about midway; that the unfortunate accident happened solely because plaintiff, without due regard for his own safety and that of others then rightfully driving on said highway, imprudently left a place of safety to enter upon one of extreme peril and danger; that Freeman had no reason whatever to anticipate that the rider of the motorcycle would act as he did, and thus bring about the emergency situation to which in no wise did the truck's driver contribute.
In the alternative, defendants plead the contributory negligence of plaintiff against any right he might otherwise have to recover herein. His negligent acts, reflected from the foregoing paraphrase of the answer, and others set forth therein, are employed as a basis for this special defense.
The testimony in the case covers three hundred pages. At the conclusion of the trial the learned judge, without further ado, rendered judgment rejecting plaintiff's demand. Prior to doing so he dictated into the record a lucid analysis of the testimony of the several witnesses introduced by each side, and, in our opinion, manifestly resolved correctly the factual issues tendered. Plaintiff appealed.
We are favored with voluminous briefs of both sides. The facts of the case were elaborately developed below and are in like manner discussed and analyzed in briefs.
Plaintiff borrowed the motorcycle from a young man at a cafe one-half mile west of the Crosby store, and promised to return it after a brief time. He drove it over the highway directly to the parkway mentioned where his own automobile was parked, beside which, at the time, Melvin T. Fowler, his uncle, was standing. He circled by Fowler and said something to him, but realizing that he was not understood, he completed the circle, again drove by Fowler and again addressed some words to him, and then proceeded toward the highway. His speed was increased as he drew near to it. He was on his way to return the motorcycle. The exact spot where he drove upon the pavement is fixed with certainty. As shall be disclosed further on in this opinion, the certainty of location of this spot is a very important fact in the case. Plaintiff and Fowler agree that plaintiff drove upon the pavement at a place where it had been patched (on south side) with an asphaltic mixture that tapered to the shoulder.
Plaintiff's version of the facts of the accident follow: When about fifteen feet from the highway he looked in both directions for traffic and saw none to his right. He did observe defendant's truck, coming at an estimated speed of thirty-five miles per hour, one hundred fifty or two hundred feet away; that he drove forward and succeeded in crossing to the north traffic lane, had "straightened out" thereon, and had traveled twenty-five or thirty feet westerly when suddenly the truck veered to its left and partially upon his lane; that the collision then occurred and head-on. We quote, in part, his testimony on this phase of the case:
"* * * so I opened the throttle up and got on over across the black line and had straightened up and my carbureter stopped up on me, so the motor choked down and I reached down with my left hand to pull the choke up on it, and when I looked up the next time Freeman's truck was so close in front of me that I couldn't dodge him. I couldn't stop and get around him any way; he whirled over in front of me or into my lane of the highway, and that's all I can remember about the accident."
Plaintiff is positive both left wheels of the truck were north of the black line when the collision happened.
The only eye witness to the accident who gave testimony favorable to plaintiff's contentions was Mr. Fowler, his uncle. His testimony corroborates that given by plaintiff in nearly all material respects. He says that when plaintiff had "straightened out" on the north lane, the truck was about one hundred feet distant and "when all at once the truck whipped over to the left hand side of the road * * * and it hit the *Page 555 
motorcycle when it whipped over." Again, he says: "He made an almost sudden dash to the left of the road"; and, finally, he testified: "He made the whirl to the left." He estimated that plaintiff had gone fifteen feet, after "straightening out" when the vehicles met; that while covering this distance the truck covered one hundred feet; and that the collision was head-on, at which time the truck was midway over the black line.
In the truck with Freeman were Lloyd Gilcrease, Jr., and J. C. Miller, employees of the gas company, both of whom gave testimony favorable to defendants as concerns the accident. In addition to these witnesses, Leon Barnett, who was at the time having his car serviced at Crosby's station, appeared as a witness for the defendants. He was looking directly at the vehicles immediately prior to and when they came together. The testimony of these three witnesses and that of Freeman, in substance and largely in detail, is to the same effect, to-wit: That plaintiff, immediately prior to entering upon the highway at the asphaltic patch, increased the speed of his vehicle and drove upon the pavement without looking in either direction; that when he did this, the truck on its proper side of the road, going at a moderate rate of speed, was within a few feet of him; that it was at this juncture that Freeman suddenly veered the truck's course to its left and collided with the motorcycle, almost broad-side, on the center line or just south of it.
There is an abundance of circumstantial evidence (physical) to support defendants' theory of the accident. The lower court attached much importance to this evidence, and properly so. The truck suffered no damage save to its right fender and headlight. This surely indicates that the truck was not going straight forward when it contacted the motorcycle but at a slight angle toward the north. In such position we would expect the right front end to first come in contact with the other vehicle; and this physical fact also supports the theory that the collision was not head-on as testified to by plaintiff and Fowler, but nearly broadside. A state trooper who arrived at the scene within a few minutes after the collision, found small clods of dirt south of the black line and traced the tracks of the truck from this dirt to where it rested on the north side of the highway, some forty feet from the clods. This dirt, it is reasoned, fell from the under side of the fender at time of impact. The trial judge was favorably impressed with the trooper's testimony.
In opposition to the contention that the collision was head-on, it is pointed out that when the truck rested, the motorcycle was beneath the right end of the front axle and scars on the pavement, caused from the wrecked machine being pushed by the truck's forward movement, led from close to the clods to the end of the tangent covered by the truck after the collision.
Had the accident happened where plaintiff and Fowler say it did, the truck, after the impact, traveled seventy-five feet instead of forty, but there was no deposit of clods, nor scrapings on the concrete at the locus of the impact as fixed by them.
It is not seriously questioned that plaintiff's body landed on the highway or the shoulder approximately fifteen feet from the site of the collision. It is shown that the body was approximately this distance northeast of a projected line across said patch to the north side of the highway. All of the circumstantial evidence and relevant physical facts definitely fix the locus of the collision on or east of this line.
Plaintiff's energetic counsel plausibly argue from estimates of distances and locations which witnesses attempt to fix, that the truck was seventy-seven feet distant from the motorcycle when it entered upon the highway, and that going at a speed of about twenty-five miles per hour it could and should have been stopped prior to colliding with the motorcycle or its course altered in time to avoid doing so. The fallacy of the argument becomes apparent when the premise upon which it is based is properly appraised. It is also in conflict with the overwhelming preponderance of the testimony that bears upon the relative positions of the vehicles when plaintiff rode upon the highway and thereafter.
No reason has been suggested, and we believe none can be shown, why Freeman *Page 556 
would have wilfully veered the truck from its proper side of the road and upon that of plaintiff when at the distance from the motorcycle plaintiff and Fowler say it was when the sudden movement occurred. It is certain Freeman had been driving prudently and was keeping his eyes upon the highway. The road's surface was dry; the weather was fair. To do as Freeman is charged, implies the grossest carelessness on his part or a purpose to injure or kill himself and/or others. Every presumption repels such an implication. He did suddenly veer the truck and for good cause, but not at the time and place plaintiff contends.
Plaintiff advances the contention that from the time Freeman, when several hundred feet away, saw plaintiff riding in circles in front of the Crosby store, he should have maintained close watch upon him and his movements from then on, and kept the truck under such control that an accident would not happen should plaintiff do the unexpected, as he did do. The rule involved in this position has application when the presence of small children upon or near the side of a highway is discovered by a motorist thereon, but it does not apply when adults, so situated, are seen. A motorist has the right to assume that adults will act sensibly, with due regard for their own interest and will not attempt to cross over a heavily traveled highway without first ascertaining if traffic conditions justify such action. Plaintiff failed to observe the old and fundamental rule, applicable to pedestrians: stop, look and listen, before undertaking to cross a highway, and to this omission of duty may be solely accredited the accident out of which he luckily emerged with his life. As to Freeman, it was unavoidable. After he realized that plaintiff had ceased his circular movements and intended to cross the highway it was then too late to maneuver the heavy truck other than was done in the hope of averting the impending collision.
The established facts of the case repel application of the doctrine of the last clear chance advanced by plaintiff in brief.
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.